# CHARLES BRADLEY

*v.*

# LUTHER W. BALLARD.

| 55 | 413 |
| 120 | 128 |
| 120 | 461 |
| 55 | 413 |
| 32a | 659 |
| 55 | 413 |
| 137 | 319 |
| 38a | 96 |
| 55 | 413 |
| 151 | 538 |
| 154 | 392 |
| 55 | 413 |
| 47a | 609 |
| 55 | 413 |
| 66a | 262 |
| 55 | 413 |
| 71a | 480 |
| 55 | 413 |
| 82a | 351 |
| 55 | 413 |
| 181 | 46 |
| 181 | 49 |
| 181 | 624 |
| 55 | 413 |
| 186 | ³198 |
| 55 | 413 |
| d90a | ⁵321 |
| 55 | 413 |
| 92a | ⁵180 |
| 55 | 413 |
| 99a | ⁴331 |
| 55 | 413 |
| 205 | ⁴152 |
| 55 | 413 |
| 114a | ⁴201 |
| 55 | 413 |
| 115a | ¹495 |
| 115a | ⁴496 |
| 115a | ¹497 |

1. CONTRACTS—*by private corporations—whether enforcible, when not within their proper powers to make them.* While it is true, that so long as the terms of a contract remain unexecuted on both sides, a private corporation is not estopped to say in its defense that it had not the power to make the contract sought to be enforced against it, for the reason, that if thus estopped, its powers might be indefinitely enlarged; yet such a corporation can not, under cover of this principle, evade the payment of borrowed money, on the ground that, although it had power to borrow money, it expended the money borrowed in prosecuting a business which it was not authorized to prosecute, even though the lender of the money knew that the corporation was transacting a business beyond its chartered powers, and that his money would be used in such business, provided the business itself was free from any intrinsic immorality or illegality.

2. While a contract remains executory, not only is it true the powers of the corporation can not be extended beyond its proper limits for the purpose of enforcing the contract, but on the application of a stockholder or of any other person authorized to make the application, a court of chancery would interfere and forbid the execution of a contract *ultra vires.*

3. So, too, if a contract *ultra vires* is made between the corporation and another person, and while it is yet wholly unexecuted, the corporation recedes, the other contracting party would, probably, have no claim for damages.

4. But if such other party proceeds in the performance of the contract, expending his money and his labor in the production of values which the corporation appropriates, the corporation can never be excused from payment on the plea that the contract was beyond its power.

5. While courts are inclined to maintain with vigor the limitations of corporate action, whenever it is a question of restraining the corporation in advance, from passing beyond the boundaries of its charter, they are equally inclined, on the other hand, to enforce against private corporations, contracts, though *ultra vires,* of which they have received the benefit.

6. And if such corporations, to increase their profits, embark in enterprises not authorized by their charter, still, as to third persons, and when necessary for the advancement of justice, the stockholders will be presumed to have assented, since it is in their power to restrain their officers when they transgress the limits of their chartered authority.

7. MUNICIPAL CORPORATIONS, however, stand upon different ground. They are not organized for gain, but for the purpose of government, and debts illegally contracted by their officers can not be made binding upon the tax payers, from the presumed assent of the latter.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The opinion states the case.

Messrs. KNOWLTON, JAMIESON & SCALES, for the appellant.

No corporation is estopped to say in defense that it had not the power to make the contract attempted to be enforced against it, for the reason, that if thus estopped, its powers might be indefinitely enlarged, and greatly beyond what the legislature would grant, if solicited. Prince on Railways, 395, 398; *Hood* v. *N. Y. & N. H. R. R. Co.* 22 Conn. 508, 509; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 484; *Penn. & Steam Nav. Co.* v. *Dantridge*, 8 Gill & J. 319; *Abbott* v. *Steam Packet Co.* 1 Md. Ch. 542; *McCullough* v. *Moss*, 5 Denio, 567; *Hodges* v. *Buffalo*, 2 ib. 110; *Boon* v. *Utica*, 2 Barb. 104; *Solomons* v. *Laing*, 12 Beavan, 352; *Steele* v. *Harman*, Park, B. 14 M. & W. 840; *Broughton* v. *Water Works*, 3 Barn. & Ald. (5 E. C. L.) 15; *Stork* v. *Highgate*, 5 Taunton, 406; *Auburn Academy* v. *Strong*, 1 Hopkin, 284; *Smith* v. *Strong*, 2 Hill, N. Y. 241; *Safford* v. *Wyekoff*, 1 ib. 442; 2 Kent's Com. 5 Ed. 291; *Salem Bank* v. *Gloucester Bank*, 17 Mass. 28, 30; *Hodges* v. *City of Buffalo*, 2 Denio, 110; *N. Y. F. Ins. Co.* v. *Ely*, 5 Cowan R. 568; *N. Y. F. Ins. Co.* v. *Ely*, 2 ib. 699; *People* v. *Utica Ins. Co.* 15 Johns. 383; *Berlin* v. *New Brittain*, 9 Conn. 180.

Mr. GEORGE HERBERT and Mr. GEORGE G. BELLOWS, for the appellees, on the same question, cited *Moran* v. *Miami County*, 2 Black, 724, 732; *Coms. of Knox County* v. *Aspenwall*, 21 How. 539; *Bissell* v. *Jeffersonville*, 24 ib. 287, 300; *Society of Savings* v. *New London*, 29 Conn. 193; *State of Indiana* v.

*Woram,* 6 Hill, 33, 37 ; *Collett* v. *Morrison,* 9 Hare, 162, 175 ; *Steam Nav. Co.* v. *Weed,* 17 Barb. 378, 380, 384 ; *Keithsburg* v. *Frick,* 34 Ill. 405, 421 ; *Maher* v. *City of Chicago,* 28 Ill. 268, 270 ; *De Wolf* v. *City of Chicago,* 26 ib. 446, 447 ; *Hope Mut. Ins. Co.* v. *Taylor,* 2 Robt. 278 ; *Rogers* v. *Danby,* 19 Vt. 187 ; *Port of London Ass. Co. Case,* 35 Eng. L. & Eq. 178, 187 ; *De Groff* v. *Am. Linen Co.* 24 Barb. 379, 21 N. Y. 174 ; *Bissell* v. *M. S. & N. I. R. R. Co.* 22 N. Y. 258 ; *Railway Co.* v. *Howard,* 7 Wallace, 412, 413 ; *Gas Co.* v. *San Francisco,* 9 Cal. 469, 470 ; *Perkins* v. *Portland, etc. R.* 47 Maine, 592 ; *Parish* v. *Wheeler,* 22 N. Y. 494 ; *Pondville County* v. *Clark,* 25 Conn. 97 ; Angell & Ames on Corp. secs. 240, 304, and notes ; *Mayor etc. Pittsburg* v. *Scott,* 1 Penn. St. 309, 317 ; *Watrous' Exrs.* v. *McLaren,* 21 Wend. 563 ; *Kingsley* v. *Vernon,* 4 Sandf. 365, 361 ; *Palmer* v. *Lawrence,* 3 ib. 161, 165, 166, 168, 176, S. C. 5 N. Y. 389 ; *L'Armoreaux* v. *Vischer,* 2 Comst. 281 ; *Zabriskie* v. *C. C. & C. R. R. Co.* 400, 401 ; *Genesee Bank* v. *Patchen,* 3 Kern. 309 ; *Central Bank* v. *Empire Stone D. Co.* 26 Barb. 36 ; *Hawkins* v. *Bowne,* 8 M. & W. 703, 709 ; *Underwood* v. *Newport,* 5 B. Mon. 129 ; *West Winsted S. Bank* v. *Fox,* 27 Conn. 290, 291 ; *Bank of Middletown* v. *Jerome,* 18 Conn. 449 ; *Lucas* v. *Hart,* 5 Clarke, 420 ; *Foster* v. *LaRue,* 15 Barb. 324, 325.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court :

This was a bill in chancery, brought by Bradley against Ballard and others, for the purpose of enjoining the prosecution of a suit pending in the circuit court of Cook county, against a corporation called " The North Star Gold and Silver Mining Company," in which complainant was a stockholder, upon certain promissory notes given by said company, and also to cancel certain other notes not yet in suit. The court sustained a demurrer to the bill, and, the complainant not asking to amend, a decree of dismissal was entered.

It appears by the averments in the bill that various persons associated themselves together in the city of Chicago, in the year 1866, and filed their articles of organization in the circuit court of Cook county, under the general incorporation law, whereby they became incorporated under the title above stated. The statute requires the certificate to state the town and county in which the operations of a company thus incorporated are to be carried on, and the certificate of this company stated that their operations were to be carried on in the city of Chicago, in the county of Cook and State of Illinois. It further appears from the bill that the company thus organized engaged in mining in the Territory of Colorado, and in the prosecution of that work borrowed large sums of money, for which the notes described in the bill were given, except some that are alleged to have been given for official salaries. It is not claimed that they were not given for a full and fair consideration, but their cancellation is sought upon the ground that they were given for money borrowed to enable the company to prosecute a business which it had no power to prosecute, and that this purpose was known to the lenders of the money. It is insisted that, although the business of the corporation was mining, yet, by the terms of its certificate, it had no power to prosecute that business beyond the limits of the city of Chicago, or certainly not beyond the limits of this State.

Whether this is the proper construction of the statute, is a question we do not find it necessary to decide. Conceding that it is, and that this corporation had no power to engage in mining in Colorado, we are still of opinion the complainant has not, by his bill, entitled himself to relief. He became a stockholder to the extent of $25,000, and from the name and character of the company he must have known it was organized for the purpose of mining beyond the limits of this State. He subsequently became one of the directors of said company, and it is a legitimate inference from the bill that at least a part of these debts were created while he was thus participating in the control of the company. There is no pretence in the bill that

he ever, in any mode, objected to the mining operations of the company, in Colorado, or to the borrowing of money therefor, and the fair, and, indeed, unavoidable inference, from the nature of the company, the connection of complainant with it, and the silence of the bill in this regard, is, that he did not object. On what ground, then, can he ask a court of equity to enjoin the collection of these notes?

It is said by counsel for complainant, that a corporation is not estopped to say, in its defense, that it had not the power to make a contract sought to be enforced against it, for the reason, that if thus estopped, its powers might be indefinitely enlarged. While the contract remains unexecuted on both sides, this is undoubtedly true, but when, under cover of this principle, a corporation seeks to evade the payment of borrowed money, on the ground that, although it had power to borrow money, it expended the money borrowed in prosecuting a business which it was not authorized to prosecute, it is pressing the doctrine of *ultra vires* to an extent that can never be tolerated, even though the lender of the money knew that the corporation was transacting a business beyond its chartered powers, and that his money would be used in such business, provided the business itself was free from any intrinsic immorality or illegality.

Neither is it correct to say that the application to corporations of the doctrine of equitable estoppel, where justice requires it to be applied, as when, under a claim of corporate power, they have received benefits for which they refuse to pay, from a sudden discovery that they had not the powers they had claimed, can be made the means of enabling them indefinitely to extend their powers. If that were true, it would be an insuperable objection to the application of the doctrine, even for the purpose of preventing injustice in individual cases. But it is not true. This doctrine is applied only for the purpose of compelling corporations to be honest, in the simplest and commonest sense of honesty, and after whatever mischief may belong to the performance of an act, *ultra vires*, has been accomplished. But while a contract remains executory,

27—55TH ILL.

it is perfectly true that the powers of corporations can not
be extended beyond their proper limits, for the purpose of
enforcing a contract. Not only so, but on the application
of a stockholder, or of any other person authorized to make
the application, a court of chancery would interfere and for-
bid the execution of a contract *ultra vires.* So, too, if a
contract, *ultra vires,* is made between a corporation and another
person, and, while it is yet wholly unexecuted, the corpora-
tion recedes, the other contracting party would probably have
no claim for damages. But if such other party proceeds
in the performance of the contract, expending his money and
his labor in the production of values which the corporation
appropriates, we can never hold the corporation excused from
payment, on the plea that the contract was beyond its power.

Take, for example, the case of a corporation chartered to
build a railway from Chicago to Rock Island. Under such a
charter, the company would have no power to build steamboats,
for the purpose of running a line of such vessels between Rock
Island and St. Louis. But suppose the company, notwithstand-
ing the want of power, should make a contract for the building
of a vessel, and it is built by the contractor, and accepted and
used by the railway. Could any court permit the corporation,
when sued for the value of the vessel, to excuse itself from
payment, on the ground that, although it has and uses the
steamer, it had no authority to do so by its charter? Or, sup-
pose that instead of having a vessel built by a contractor it
employs a superintendent to build it, and hires mechanics by
the day. Could it escape the payment of their wages, on the
ground that it had employed them in a work *ultra vires?*

In cases of such character, courts simply say to corporations,
you can not in this case raise the question of your power to
make the contract. It is sufficient that you have made it, and
by so doing have placed in your corporate treasury the fruits
of others' labor, and every principle of justice forbids that you
be permitted to evade payment by an appeal to the limitations
of your charter.

We are aware that cases may be cited in apparent conflict with the principles here announced, but the tendency of recent decisions is in harmony with them. While courts are inclined to maintain with vigor the limitations of corporate action, whenever it is a question of restraining the corporation in advance from passing beyond the boundaries of their charters, they are equally inclined, on the other hand, to enforce against them contracts, though *ultra vires*, of which they have received the benefit. This is demanded by the plainest principles of justice. 2 Kent, 11 Ed. p. 381, note; *Zabriskie* v. *C. C .& C. R. R. Co.* 23 How. U. S. 381; *Bissell* v. *M. S. & N. I. R. R. Co.* 22 N. Y. 258; *Cary* v. *Cleveland & Toledo R. R. Co.* 29 Barb. 35; *Parish* v. *Wheeler*, 22 N. Y. 494; *Groff* v. *Am. Lin. Th. Co.* 21 N. Y. 124; *Argenti* v. *San Francisco*, 16 Cal. 255; *McCluer* v. *Manchester & L. R.* 13 Gray, 124; *Chapman* v. *M. R. &. L. R. R. Co.* 6 Ohio, 137; *Hall* v. *Mut. Fire Ins. Co.* 32 N. H. 297; *Railroad Co.* v. *Howard*, 7 Wallace, 413.

If the complainant in this case had, as a stockholder, asked a court of chancery to enjoin this corporation from mining in Colorado, it would have examined the charter, and if it had arrived at the conclusion that such mining was beyond the powers derived from filing the certificate in question, under our statute, would have issued the injunction. But this he did not do. On the contrary, he has participated in the work, and so long as there was hope of gain, he was willing the money should be borrowed by which the work was to be carried forward. The borrowing of the money was not, in itself, an act *ultra vires*, nor was the giving of the notes. The money was not borrowed to be used for an illegal or immoral purpose. The lenders have been guilty of no violation of law, nor wrong of any kind. The corporation has received their money and used it for a purpose, which, whether *ultra vires* or not, was unquestionably the sole purpose for which the corporators associated themselves together, and for which this complainant became a stockholder. Justice requires the corporation to repay the money it has thus borrowed and expended.

What we have said applies only to private corporations, organized for pecuniary gain. If, to increase their profits, they embark in enterprises not authorized by their charter, still, as to third persons, and when necessary for the advancement of justice, the stockholders will be presumed to have assented, since it is in their power to restrain their officers when they transgress the limits of their chartered authority. But municipal corporations stand upon a different ground. They are not organized for gain, but for the purpose of government, and debts illegally contracted by their officers can not be made binding upon the tax payers, from the presumed assent of the latter.

There are some vague charges in the bill, of conspiracy, between the holders of the notes upon which suit has been brought and some of the directors, but no facts are alleged showing, or tending to show, any wrongful or fraudulent intent. The alleged conspiracy seems merely to be an understanding between the holders of the notes and the majority of the directors, by which the latter will allow the former to obtain judgment on their notes, and we do not perceive why they should not. If the complainant has had the misfortune to associate himself with persons of less pecuniary responsibility than himself, for the purpose of carrying on a hazardous business, in which heavy debts have been incurred, it is a misfortune of which the courts can not relieve him, merely on a vague and general charge of conspiracy against his fellow stockholders or directors. No facts are alleged in this bill which can be made the foundation of relief. As before remarked, the counsel of appellant has presented his case simply on the question of corporate power. We are of opinion the demurrer was properly sustained to the bill.

*Decree affirmed.*

Mr. JUSTICE SCOTT dissents.