Freeman, J.,
delivered the opinion of the court:
This bill is filed for the purpose of enforcing the terms and stipulations contained in a decree made by the chancery court at Nashville, Tennessee, in a proceeding against certain delinquent railroads, ámong which was the Rogersville and Jefferson road. It appears from the allegations of the bill now before us, that Hawldns county, as a large stockholder in said road, was a party to the proceedings on the part of the state seeking to sell the road by virtue of its lien and to indemnify the state for its liabilities incurred in building the same; that said county was prepared by her counsel to resist the relief sought by the bill of the state, and to litigate the right of the state to sell the road on the grounds assumed in the bill filed for this purpose; that by her counsel, her proposition was made to withdraw all opposition on certain terms, which were accepted, and a decree for the sale made in pursuance of these conditions and stipulations, which were inserted in said decree. They are as follows: “And it being agreed that said company is insolvent and unable to pay said debt, or to meet the interest thereon; and it being further agreed that the State of Tennessee has liens on all franchises of said company, and has the right to enforce said lien, but it is not conceded by said company and stockholders, that the state has an immer diate rieht to sell the said property and franchises, but the company and stockholders are willing to yield the same, and agree to an immediate sale of the property and franchises, and all the interest of the stockholders and all others therein, provided said sale shall be made upon the condi *294 tions that said road shall be kept up aud be maintained and operated and run by the purchaser, his heirs, successors and assigns, in the manner in which the same is now kept up and maintained, and run and operated, and it being expressly agreed that such sale shall be made on such express conditions, and the court being of opinion that by law, without exacting such conditions, such obligations and duties would attach to the purchaser, his heirs, successors or .assigns, it is therefore agreed that such sale be made upon the conditions that the purchaser, his heirs, successors or assigns, forever keep up and maintain the same as a public read, and shall forever run and operate the same by steam power in the manner the same is now run and operated.” The decree then goes on to specify the number and character of trains to be run, and concludes as follows: “And the right is expressly reserved to the county of Hawkins to institute suit to compel the execution of the conditions, duties and obligations of said purchaser, his heirs, successors or assigns, in regard to the stipulations hereinbefore set forth.”
The bill then charges that said road was sold in pursuance of the decree, and bought in the name of Joseph laques and his associates, but for the benefit of the East Tennessee, Virginia & Georgia Railway Company, and by the decree of the court the title was vested in said company. In that decree confirming the sale and vesting the title in the East Tennessee, Virginia & Georgia Railway to all the property, rights, privileges, franchises and immunities before that belonging to the RogersHlle & Jefferson Railroad Company, it is expressly provided that it is done in accordance with the terms of the decree of the 6th day of July, and the other decrees rendered in the cause in regard to the said Rogersville & Jefferson Railroad Company.
The East Tennessee, Virginia & Georgia Railroad, as is alleged, continued to run this road after this purchase, as required by the conditions imposed in said decree, until *295 December, 1873, when it was discovered that tbe bridge over the Holston river was unsafe, or sncb discovery was pretended to bave been made, since wbicb time tbey have failed to run further than to tbe river. It is charged that no steps bave been taken to repair this bridge, but that Jaques, as vice-president- and superintendent of tbe road, and Mitchell, as secretary and treasurer of tbe company, bave "executed a pretended conveyance of said road, franchises and property, by deed, to one W. P. Elliot, purporting to convey in tbe name of tbe East Tennessee, Virginia & Georgia Railroad Company.
It is insisted that this conveyance is not valid, because not made by consent of stockholders or of any formal meeting of the director of tbe company. It is then expressly charged that this conveyance was a fraudulent contrivance and device on tbe part of tbe -officers and tbe company, to throw off tbe duty of running tbe road, as agreed on in said decree,-upon a man wholly irresponsible, without tbe means to pay anything for tbe road or to operate it, or pay damages for failure, and that this was adopted as a means of defeating tbe rights of the public and of Hawkins county, in said road, and their remedies to compel tbe running and operating '[of] tbe same-. It is also alleged that this conveyance -is fraudulent, and not real to Elliot, but that be is to bold it secretly and beneficially to tbe company.
Tbe prayer of tbe bill is, that tbe sale to Elliot be declared void, and for a specific execution of tbe contract contained in the decree under wbicb tbey purchased against tbe East Tennessee, Virginia & Georgia Railroad Company, and for general relief.
This sale of tbe Rogersville-■& Jefferson road was confirmed at October term, 1873, of tbe chancery court at Nashville-, and tbe contract must be considered as having been made at that time. Before confirmation tbe contract of sale was only an offer wbicb might or might not be accepted by tbe court.
*296 The first question presented by the demurrer, and the one on which the case mainly turns, at any rate in a leading aspect of it, is, that the East Tennessee, Virginia & Georgia Bailroad Company had no power to purchase the Bogersville & Jefferson road; that the contract was ultra vires, and not binding on the corporation. This question of ultra vires, as to corporations or these private corporations, or rather quasi public corporations, is one of great interest, and at the same time one of much difficulty in its application. In addition to this, the authorities will be found to be contradictory and unsatisfactory on some branches of the question. In one general principle, the authorities, _ both English and American, seem to agree — that is, that corporations, in their ordinary operations, are creatures of the law, and can only exercise the powers conferred by their charter, and for the purposes and ends of their creation. Such incidental powers as are usual, necessary and proper to carry out and render effectual the granted powers, being always, as a matter of course, implied.
In the application of this principle to cases where the corporation or its directors are proposing to engage in a business not authorized, or in a misuse, or diversion of the corporation funds from" their legitimate objects, as defined in their charter, the courts, as a general thing, have maintained the principle with stringency and vigor, and have almost uniformly restrained the parties from such violation of the charter, or from going beyond its boundaries. See case of Bradley v. Ballard, 8 Am. R., 659. [S. C.., 55 Ill., 413.]
In applying the principles to the acts of the officers, directors and agents of the company, when the act in excess of power has been done, is complete, the question of their individual responsibility has, in most, if not all oases, been rested on the ground of fraud on the corporation, or of connivance at such fraud in others, or when such fraud might have been prevented had they given ordinary atten *297 tion to their duties; or where there was a clear, unmistakable want of authority to do the act complained of, and the parties must have known they were acting beyond, their powers and in violation of their duties. See cases cited in Spering’s Appeal, 10 Am. R., 686-688 [S. C., 71 Penn. St., 11]; Pickering v. Stephenson, 3 Eng. R. (by Moak), 771 [S. C., L. R, 14 Eq. Gas., 342.]
In reference to the direct question in this case as to whether a corporation can interpose the defense of ultra vires, when liabilities incurred by a contract are sought to be enforced, and the corporation has received and enjoyed the benefits of such contract, the authorities are not well agreed; the courts are inclined in the latter eases to enforce such contracts and the responsibilities growing out of them. The sound rule of this question, we think, is given in the case of Bradley v. Ballard, 55 Ill., 413; S. C., 8 Am. R., 656, 659. "While the contract remains unexecuted on both sides, a corporation may say, in defense to its enforcement, that it had not the power to make such contract. Nor can the power of a corporation be extended beyond their proper limits for the purpose of enforcing a contract. Not only so, but on the application of a stockholder, or any other person authorized to make the application, a court of chancery would interfere and forbid the execution of a contract ultra vires. But if a party proceeds in the. performance of a contract, expending his money and his labor in production of values, which the corporation appropriates, we can never hold the corporation excused from payment or performance on the plea that the contract was ultra vires. See also' cases cited in this opinion on the question, p. 659.
-A like principle of honesty and good faith on the part of these artificial persons created by law, is laid down by Mr. Justice Campbell, in the. case of Zabriskie v. Cleveland, Col. & Cin. Railroad et al., 23 How., 400, 401. [L. ed., Book 16, p. 498.]
He says: “A corporation, quite as much as an individ *298 ual, is held to a careful adherence to truth in their dealings with mankind, and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct bad superinduced.”
The two cases we have cited from above were not identical in facts with the present, but the principles laid down, we think, are sound, and may well be applied to the case in hand. The East Tennessee, Virginia & Georgia Railroad Company have purchased the Rogersville road. By the terms of the contract, it has solemnly taken upon itself 'the obligations and stipulations we have set out. They held, used and occupied the road thus purchased for some time, until their sale, or pretended sale, as alleged, to Elliot. The company has ratified and affirmed, and by their attitude in this case, stand as still affirming that contract, so. far as the property is concerned and its ownership. The county of Hawkins, a large stockholder in said purchased road, has yielded its right to oppose the sale of the road, upon the consideration of these stipulations. This right was one, to say the least of it, the yielding of which might well support a contract, on the principle of a compromise of a claim having no unsubstantial basis in right. By the provisions of the act of 1852 [acts of 1S51-2, ch. 151; Code of 1858, secs. 1091 — 1123], it was stipulated that if companies receiving state aid failed to pay the interest on bonds issued to them, they were to be taken possession of by the state, placed in the hands of a receiver and run by the state, the proceeds to indemnify the state for its liability. Code (1858), sec. 1101.
The state was proceeding in advance to sell the roads, to secure its indemnity on the bonds before their maturity.
Under these circumstances the plainest principles of honesty and good faith require that the purchaser shall not be permitted to hold to the benefit of the purchase, and at the same time repudiate the burdens imposed. This is no con *299 test between a stockholder of the East Tennessee, Virginia &' Georgia Railroad, seeking to inhibit the company from entering into a contract, ultra vires; but so far as this case goes, the company and its stockholders acquiesce in the purchase, hold the property, but seek to repudiate the burdens imposed by the contract in favor of others. We could not permit this unless a most imperative and unbending rule of law required it, and such a rule, we may add, would not be in accord-with the spirit and end of our jurisprudence, which is to maintain justice and enforce the principles of a wholesome morality in connection with the integrity of contracts.
In addition to these gerleral considerations, based on sound principles and authority, by the act of December 11, 1871 [acts of 1871, ch. 69. See Code, secs. 1509-1537], it is provided that every existing railroad corporation in this state shall have the power to acquire, by purchase or other lawful contract, with power to issue bonds to raise the means of payment; also power to consolidate with any other railroad corporation, and have, hold, use and operate any other railroad corporation connecting with or intersecting such road. Under this statute ample power is given to make the contract, and we assume that the purchase was made in pursuance of this authority. Whether this law becomes a part of the charter of the companies of the state or not, we need not now determine, until accepted by some definite act of the corporation, further than to say that action under the law would be held to be an acceptance, and acquiescence on the part of stockholders in such action would amount to assent to the action of the company.
How far such new power would be binding on a dissenting stockholder we need not discuss, as no dissent is shown in this record in that direction. See on this last point Zabriskie v. Hackensack and New York Railroad Co. et al., Am. L. Reg., vol. 6, 420.
*300 The result is, that the respondents have purchased, not repudiating that purchase, but holding the property and exercising proprietary rights over the same, are estopped to refuse to stand by and perform the stipulations in their contract, which formed a material consideration for the same, in favor of others whose rights have been yielded in view of .such stipulations, especially in connection with the power to purchase, conferred by the statute which we have cited. We may add, in answer to the argument that the general principle announced enlarges the power of a corporation beyond its charter, that this is not correct. It is only the enforcement of common honesty in the particular case, but so far as other contracts, or power to' make them, is concerned, leaves the corporation where it was before, with full power in the stockholders to seek the aid of a court of equity to prevent their formation or execution, when executory, and ample means of restraining officers and directors from exceeding their .powers.
The ground on which this question of ultra vires will ultimately be settled in our jurisprudence is probably this, that when the contract is forbidden by the charter, it will be held absolutely void; when it is simply authorized by the general powers conferred in the charter, or fairly to bo implied as necessary and incident to the exercise of the powers granted, as to third parties, it will be held binding, when it would work injustice on such party and have the element of fraud or unconscious advantage on the part of the corporation to estop it; but as between the stockholders or corporation and its officers and agents, the latter will be held responsible for clear violation of duty in making such contracts, or for fraud or gross negligence in the performance of the trusts imposed on -them. We do not say that these miles can be found laid down in all the cases, nor fairly deduced from many of them, but such is the tendency of the modern decisions and the principles of many well considered cases, and we think it is the sounder mew *301 of the question. (See note to Kent’s Com., vol. 2, 11 ed., p. top 35, and cases cited, and.especially Bissel v. Mich. & Ia. Railroad Co., 22 N. Y., 258, for a very able discussion of this question pro and con, in opinions by Comstock and Selden.)
It will be seen that we put this question on the ground of contract, as it is, and do' not discuss the question of the right to compel a company to run and operate its road, growing out of the simple fact of the franchise for the purpose, in connection with aid furnished by the state for its construction, in consideration of anticipated public benefit.
It may be said this contract is executory, and that we are executing it. We do not think it is strictly such in the aspect presented before us. The contract for running and operating the road is one, in its nature a continuing contract, and in part must remain executory. It has, however, all the completeness it can ever have. All has been done that ever can be done by both parties in its execution, and the rule, if not enforcing 'an executory contract ultra vires, could not be held to apply, if the contract be such a one as is binding upon the corporation. We have held that it is.
It is said that the company, even though it might have the power to buy the Rogersville road and franchises, had no power to make a contract to run and operate it, such as the one now before us. To this we need but answer thai the power to purchase the road with its franchises necessarily involved the right to use and operate the road in the Use of the franchises purchased, and what the company might do under its purchase without special contract, it might well bind itself by contract. As to> the power of a court of chancery to compel specific performance of such a contract, the authorities cited for complainant seem to sustain the jurisdiction. In one case a specific performance of contract for delivery of eight hundred tons of iron, to* be delivered and paid for in a series of years, was enforced; also for an annuity for life. 1 Cond. E. Ch. R., 313. In Redfield *302 on R., vol. 2d, it is laid down that courts of equity will decree specific performance of contracts by a railway company with a landowner in regard to farm crossings and such like works, upon tbe lands of tbe company, whore non-performance could not be compensated in damages. We think on the aspects of this contract, as prescribed in the bill, there can be no difficulty in exercising the jurisdiction. There may be qualificatons to the application of the general principle of specific performance to the question of compelling a company to run and operate a road, growing out of the peculiar nature of such a contract — such as are suggested in a case in note 6, Red. on R., vol. 2, 34 (13 Ohio State R., 544), but we see no difficulty in this particular case. It would be easy to reach the company through its officers and directors by the injunctive powers of the court.
From the charges of the bill, in substance, that this sale to Elliot is not a real contract of sale and transfer bona fide, but is only a device to shift off the burden imposed by the contract of purchase contained in the decree at Nashville, while the company is the real owner of the road, for so we understand the allegations, we are relieved from examining 0!' deciding the question of the liability of the East Tennessee, Virginia & Georgia Railroad Company after a real sale of this road, and bona fide transfer of its rights in the property and franchises, and whether such transfer would fix the liability alone on the purchaser, and relieve the company from its contract. We do not consider or decide this question, because, as we have said, the case made, as we construe the bill, does not necessarily compel its decision; and, we may add, that we find that we have not access to the authorities by which we might properly investigate the question. It is one, to say the least of it, of no little difficulty, and one which it will be time enough to^ decide when directly presented.
The demurrer, we hold, is well taken, so far as defend *303 ants, McGhee, Jaques and Mitchell are concerned. Individually, they are not proper parties, nor can any relief be had against them under the allegations of the bill. They are not in any way bound by the contract in the Nashville decree. The railroad company were the purchasers of the road, and alone bound by the stipulations of the contract.
The only other question we deem proper to notice is, that the county of Hawkins cannot sue, but the suit must be in the name of the justices of the county court of Hawkins, as representing its civil and political power. While it was held in the case of Maury county v. Lewis county, 1 Swan, 239, that the suit was properly brought in the name of the justices of the county, where one county sued the other in reference to an infringement on its constitutional territory, we do not think the case can be held as authority for the propositen that a suit such as is now before us, could not be brought in the name of the county. Counties have been universally held as corporations, and as such, on general principle, might sue.
We do not think this objection, however, in any aspect of it, is one that goes to the right to> sue, and in a court of equity, where that which is mere form may be dispensed with, we do not think the objection is one that should be held fatal. The contract is made with the county of Hawkins, and may well be enforced in her name. If it should be thought that the suit is not authorized by the justices, then it would be easy to require authority to be shown, or the bill might be amended in this matter of form in the court below.
The result is that the chancellor was correct in overruling the demurrer, so far as the East Tennessee,' Virginia & Georgia Railroad Company was concerned, but in error as to McGhee, Jaques and Mitchell. A decree will be drawn in .accordance with this view, and the case remanded to be proceeded in. The costs of this court will be paid by the *304 company, and of making Jaques, McGhee and Mitchell parties in the court below, by the county of Hawkins.