## Peoria Star Company v. Nathaniel S. Cutright, et al.

### Gen. No. 4,403.

1. CORPORATION—*power to borrow money.* The power of a corporation to borrow money in furtherance of its corporate powers and issue its notes therefor, is a necessary incident to the power conferred by its charter.

2. CORPORATE ACTS—*distinction between those which are mala in se or mala prohibita and those which are merely ultra vires.* There is a well-defined distinction to be noted between acts which are *mala in se* or *mala prohibita* and those which are merely *ultra vires:* as respects the former, the peace and good order of the state is involved, and the law pronounces every contract to perform such an act, or in consideration of, or in furtherance of such performance as absolutely void, while that which is merely *ultra vires* does not necessarily involve any moral turpitude or illegality.

3. ESTOPPEL—*when, arises against corporation.* Where a corporation gives its notes for a legal and valid consideration which it appropriates and receives the benefit of, it is estopped (the contract as to it being fully executed) from asserting its want of power to execute the same.

Action of assumpsit. .Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

·ARTHUR KEITHLEY, for appellant.

PAGE, WEAD & HUNTER, for appellees.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action of assumpsit brought on four promissory

notes by the payee against the makers. The first note in the series is as follows: .

§276.23.    " Peoria, Ill., Feb. 5th, 1902.

Three months after date we promise to pay to the order of Cutright & Russell, Two Hundred Seventy-Six and 23-100 dollars.

Value received, with interest at six per cent per annum from date until paid.

Mrs. E. A. Powell.

Peoria Star Co.

Per Chas. H. Powell, Treas."

The other three notes were similar to this one except they matured in six, nine and twelve months, respectively.

The Peoria Star Company pleaded the general issue, verified by an affidavit, thus putting in issue the execution of the notes and the authority of Powell to execute them for it. Appellees offered preliminary proofs sufficient, in the opinion of the trial court, to justify the admission of the notes in evidence, which when read to the jury made a *prima facie* case for appellees. Appellant then offered its charter in evidence which shows the Peoria Star Company was incorporated in 1897, with a capital of $25,000, for the purpose of printing, publishing and selling a daily newspaper in the city of Peoria, Illinois; also, a certified copy of proceedings of its board of directors on December 16, 1901, showing the resignation of Charles H. Powell as secretary, and the election of James S. Allen to that position; also, a resolution adopted at this meeting that no indebtedness was to be incurred without the consent of the full board of directors, and no notes, checks, or other obligations to be issued unless signed by the president and secretary. Evidence was offered tending to prove that the notes in question were executed by Charles H. Powell without any authority from the company and for a purpose not connected with the business of publishing a newspaper. The jury found the issues for the plaintiffs below and the Peoria Star Company appeals.

Appellees are lumber merchants and the notes in suit were

given in payment for lumber that went into a house on the premises belonging to and occupied by Mrs. E. A. Powell, who is the widow of a deceased brother of Charles H. Powell. The evidence tends to show that either the Peoria Star Company, or E. F. Baldwin and Charles H. Powell, who were president and secretary, respectively, of the company and owned or controlled a majority of the stock, recognized a very great obligation to Mrs. E. A. Powell, because of financial help rendered them by her deceased husband, the exact nature and amount of which is not disclosed by the evidence. In view of this obligation Mrs. Powell was put on the pay-roll of the Star Company at an allowance of $10 per week, which was paid regularly with the full knowledge of the officers of the Star Company for a year and a half before the notes were executed and for several months afterwards. Some time in 1901 Mrs. Powell's house was burned, on which she collected about $700 insurance; $617.25 of this money was turned over by her to the Peoria Star Company at the solicitation of Charles H. Powell and E. F. Baldwin, and used by the company in its business. At the time the money was turned over to the company, the evidence tends to show that Charles H. Powell told Mrs. Powell, in the presence of her son H. M. Powell, that she need not worry about her house burning down, that they would build her a new one and furnish it and pay for the lumber, and all they wanted her to do was to turn over this insurance money to the Star Company; that it did not make any difference how long she lived, they could never repay her the debt they owed her, but they would do all they could.

After the lumber was delivered by appellees for the new house, Charles H. Powell went in person to see appellees about settling the bill, arranged to give the notes in suit and also told appellees he would get Mrs. E. A. Powell to sign the notes, which would make them bankable; this was agreed to by appellees and the notes were afterwards executed and delivered to the payees in pursuance of this arrangement. While it is true the evidence shows that James J. Allen

was elected secretary in December, 1901, and appointed general manager of the Star Company at the same time, still Charles H. Powell, who had been secretary before Allen came into the company, continued for several months in active control and management of the affairs of the company; that he signed notes and gave orders as treasurer which were paid, notwithstanding the resolution requiring the signature of the president and secretary; that appellees had sold lumber to appellant on a contract made by Charles H. Powell, which was approved and paid for by the company and that appellees had no notice that any change had taken place in the relation of Mr. Charles H. Powell to the company at the time he signed the notes in question.

The contention of appellant is that the notes are *ultra vires* and void as against the company, and second, they were executed by an unauthorized agent.

The power to borrow money, in furtherance of the corporate purpose, is a necessary incident to the power conferred by the charter of the company. Cook on Corporations, vol. 3, sec. 760, 5th ed., and cases there cited; West v. Madison Co. Ag'l Board, 82 Ill. 205. To hold that a corporation organized for any legitimate purpose did not have the power to borrow money and issue its notes, bonds or other evidences of indebtedness, to raise money to effectuate any lawful purpose connected with and germane to its corporate objects, would be to deprive such corporation of the means of carrying out the purposes of its creation. Peoria & Springfield R. R. Co. v. Thompson, 103 Ill. 187. Even if this were not true, and the company in fact does borrow money without any express or implied power to do so, it must repay the money borrowed. Humphrey v. Patrons' Mercantile Ass'n, 50 Iowa, 607; Larwell v. Hanover Ass'n, 40 Ohio St. 274; Bradley v. Ballard, 55 Ill. 413; Darst v. Gale, 83 Ill. 136. The use of the money borrowed for an *ultra vires* purpose, though known to the lender, is no defense. Wright v. Hughes, 119 Ind. 324. There is a well-defined distinction to be noted between acts which are *mala in se* or *mala prohibita*

and those which are merely *ultra vires;* as respects the former, the peace and good order of the state is involved, and the law pronounces every contract to perform such an act or in consideration of, or in furtherance of such performance as absolutely void, while that which is merely *ultra vires* does not necessarily involve any moral turpitude or illegality. The words *ultra vires* and *illegality* represent ideas that are totally distinct and altogether different. While there may be a .confusion of these terms in some of the earlier cases in England, yet the books are full of later cases, both in England and in this country, where the distinction is clearly pointed out. To illustrate, a street railway company may make a subscription to be paid out of its corporate funds, to build a church, establish an orphans' home, or a hospital for inebriates, by the sanction of its board of directors, and the contract would be clearly *ultra vires*, and so long as it remains executory, there is no doubt a court of chancery would interpose at the suit of a stockholder to enjoin the payment, but there is nothing illegal in the building of churches, or orphans' homes, or hospitals. An act may be both *ultra vires* and illegal, but it is not illegal simply because it is *ultra vires.* Bissell v. Michigan Southern R. R. Co., 22 N. Y. 258. When the courts are appealed to to interpose to restrain the performance of an *ultra vires* act, the rule is applied with great stringency to the corporation; but after an act has been executed which is not illegal, either by the corporation or by the other contracting party, the plea of *ultra vires* is rarely ever available as a defense to an action on the contract by the party who has performed. Bissell v. Michigan Southern R. R. Co., *supra*, and cases there cited; Bradley v. Ballard, *supra;* National Home Bldg. Ass'n v. Bank, 181 Ill. 35.

It is very clear that the execution of these notes was to reimburse Mrs. Powell for the money she had advanced to appellant, when it was hard pressed and was borrowing, as the evidence shows, from everybody who would loan it funds. The fact that the notes were made payable to a third party, so long as the object and purpose was to dis-

charge a debt it owed to Mrs. Powell, can make no differ-
ence; it was none the less within the power of the corpora-
tion to execute the notes. It may be that when Mrs.
Powell turned over her insurance money to the company,
upon the assurance that a new house would be built and
furnished for her, that the stress of circumstances forced
appellant to make an improvident and ill-advised contract,
but in view of the relationship existing and the fact of a
prior obligation that was bearing upon the mind of the
representative of the company, the difference between the
amount received and that to be paid is not so significant.

There is still another view respecting the contention that
these notes are *ultra vires* and void. If we are right in
assuming that the $617.25 turned over to appellant forms
a valid and legal consideration for the notes, the contract
having been fully executed on the part of Mrs. Powell, and
the company having received and appropriated to its cor-
porate purposes the benefits arising from the transaction,
it is estopped from asserting its want of power when sued
on its obligations executed in consideration of the benefits it
has received. In Peoria & Springfield R. R. Co. v. Thomp-
son, *supra*, Mr. Justice Mulkey used the following pointed
and vigorous language: "We do not at all question the
general principle contended for by appellant's counsel, that
negotiable securities issued without authority of law, or in
express violation of a statute, are inoperative and void in
the hands of even innocent holders; yet there is another
rule of law equally well settled, namely, that although a
contract entered into by the agents or officers of a private
corporation is *ultra vires*, and therefore not binding on the
company so long as it remains executory, yet if the com-
pany in such case knowingly permits the other contracting
party, without objection, to go on and perform the contract
on his part, and thereby obtains and appropriates to its
own use money, property or labor in furtherance of some
legitimate corporate purpose, it will be estopped from de-
nying its liability on such contracts," citing Bradley v. Bal-
lard, 55 Ill. 413; Chicago Building Society v. Crowell, 65

Ill. 453; City of East St. Louis v. East St. Louis Gas Light and Coke Co., 98 Ill. 415; Darst v. Gale, 83 Ill. 140. The principle announced in the above cases last cited applies with special force to the second contention of appellant respecting the power and authority of Charles H. Powell to sign the notes.

The company is clearly estopped from denying the authority of Powell to execute the notes in question.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*