**MITCHELL INVESTMENT CO.,**
**Plaintiff-Appellant,**

v.

**FEDERAL SAVINGS AND LOAN**
**INSURANCE CORPORATION,**
**Defendant-Appellee.**

**No. 83–3313.**

United States Court of Appeals,
Sixth Circuit.

Argued March 14, 1984.

Decided Aug. 17, 1984.

David S. Cupps (argued), Vorys, Sater, Seymour & Pease, Columbus, Ohio, for plaintiff-appellant.

Albert R. Ritcher, Asst. U.S. Atty., Columbus, Ohio, Jeffrey M. Werthan, David A. Felt (argued), Washington, D.C., for defendant-appellee.

Before ENGEL, KEITH and MERRITT, Circuit Judges.

MERRITT, Circuit Judge.

In 1977 Mitchell Investment Company purchased one million dollars worth of a special class of preferred stock issued by the financially troubled Telegraph Savings & Loan Association pursuant to a subscription agreement which provided that Mitchell Investment could require redemption of the stock at the purchase price if Telegraph Savings, or any successor or assign thereof, sold substantially all of Telegraph Savings' assets. In 1980 Telegraph Savings was declared insolvent and the Federal Savings & Loan Insurance Corporation (FSLIC), acting as receiver, sold substantially all of Telegraph Savings' assets to another financial institution. The question presented is whether Mitchell Investment's right to require redemption of the stock is enforceable and, if so, against whom and under what procedure.

## I.

Telegraph Savings is a state chartered savings and loan association organized under the laws of Illinois. In 1977 Telegraph Savings was experiencing financial difficulty and Mitchell Investment, plaintiff below, entered into negotiations for the purpose of investing in the troubled institution. The negotiations led to a subscription agreement that required Telegraph Savings to issue and Mitchell Investment to purchase 1,000 shares of "Permanent Preferred Shares Series 1" at a price of $1,000 per share.

Mindful of Telegraph Savings' precarious situation and the risks inherent in holding permanent reserve stock,[1] Mitchell Investment sought to protect itself in the event Telegraph Savings became insolvent. To this end, the subscription agreement provides that if the corporation sells substantially all of its assets "any holder of Preferred Shares Series 1 may at his option require the redemption of all or any part of his Preferred Shares Series 1." Joint Appendix at 97. The agreement further provides that redemption of this stock "shall be subject to such requirements as may be imposed from time to time by statute or regulation, whether state or federal" and that all redemption payments "are made subject to such restrictions as state and federal regulatory authorities may impose acting pursuant to statutes and regulations from time to time in effect." Id. at 97–98.

The attempt by Mitchell Investment to keep Telegraph Savings afloat was unsuccessful: in 1980 the FSLIC concluded that Telegraph Savings' financial condition prevented it from conducting its normal busi-

---

1. Illinois savings and loan associations can issue two kinds of equity: withdrawable capital accounts and permanent reserve shares. Illinois Savings and Loan Act § 4–1, ILL.ANN.STAT. ch. 17, § 3091 (Smith-Hurd 1981). Withdrawable capital accounts, although treated as equity for some purposes, are essentially savings deposits and they must be insured. Permanent reserve shares, on the other hand, are equity investments analogous to stock commonly issued by corporations not governed by special regulatory schemes. They "function as secondary reserves out of which losses are paid when all other available reserves have been exhausted[;] such stock is not withdrawable until all liabilities of the association have been satisfied in full. Permanent reserve shares are basically risk capital and function as protection for withdrawable capital accounts." Lanigan v. Apollo Savings, 30 Ill.App.3d 781, 332 N.E.2d 591, 595 (1975) (citations omitted); accord Lanigan v. Apollo Savings, 52 Ill.2d 342, 288 N.E.2d 445 (1972).

The record does not disclose why Mitchell Investment chose to purchase permanent reserve shares instead of a less risky investment device.

ness; the Illinois Commissioner of Savings and Loan Associations issued a custody order; the Federal Home Loan Bank Board-appointed the FSLIC as receiver; the FSLIC sold substantially all of the operating assets and associated liabilities of Telegraph Savings to another savings and loan association; and the remainder of Telegraph Savings assets and liabilities were transferred to the FSLIC in its corporate capacity. *See Telegraph Savings and Loan Association v. Schilling,* 703 F.2d 1019 (7th Cir.) (upholding takeover and sale of Telegraph Savings), *cert. denied,* — U.S. —, 104 S.Ct. 341, 78 L.Ed.2d 681 (1983).

Promptly after the takeover, Mitchell Investment notified the FSLIC of its intent to exercise its contractual right to require redemption of its permanent reserve shares. The FSLIC refused to honor the request and Mitchell Investment filed suit against the FSLIC in its corporate capacity alleging breach of contract and unjust enrichment. Mitchell Investment's theory is that its contractual right is among the residual liabilities ultimately transferred by the FSLIC in its capacity as receiver to the FSLIC in its corporate capacity.[2] Mitchell Investment expressly eschews reliance on any procedure that would permit it to present its claim to the FSLIC in its capacity as receiver, maintaining instead that it may proceed directly against the FSLIC in its corporate capacity as the successor to or assign of Telegraph Savings' contractual responsibilities to Mitchell Investment.

2. The FSLIC, "an instrumentality of the United States," is organized as a "body corporate" and has many of the attributes of private corporations. 12 U.S.C. § 1725(c) (1982). In addition to its powers as an insurer of deposits, the FSLIC has statutory authority to act as a receiver when a state chartered savings and loan association is in default. *See* 12 U.S.C. § 1729(c)(1)(A) (1982). For a discussion of the role of the FSLIC acting as receiver for state associations, *see* Senate Report No. 1263, 90th Cong., 2d Sess., *reprinted in* 1968 U.S. CODE CONG. & AD.NEWS 2530, 2535.

3. Pursuant to its broad statutory authority, the Federal Home Loan Bank Board has issued detailed regulations defining the rules of decision for claims against an insolvent savings and loan association. 12 C.F.R. §§ 569a.1 *et seq.*

In the District Court the FSLIC argued there was no proof that it assumed this contractual obligation and that, in any event, the claim must be presented to the FSLIC in its capacity as receiver. The District Court, in an unpublished opinion, held that the FSLIC in its corporate capacity did not assume the contractual obligation of Telegraph Savings to Mitchell Investment, and thus granted the FSLIC's motion for summary judgment. *Mitchell Investment Co. v. Federal Savings and Loan Insurance Co.,* No. C–2–81–661 (S.D. Ohio May 24, 1983). This appeal followed.

During the course of this appeal, this Court directed the parties to address the enforceability of the redemption agreement under Illinois law, which both parties agree controls.[3] Upon consideration of the supplemental briefs filed by the parties, we conclude that Mitchell Investment has failed to prove compliance with state statutory procedures governing retirement of permanent reserve capital. We thus affirm the District Court, albeit on grounds not relied on by that Court.

## II.

The Illinois Savings and Loan Act[4] establishes a procedure for redeeming the permanent reserve capital of a savings and loan association, including a requirement that the Illinois Commissioner of Savings and Loan Associations (Commissioner) approve of the proposed redemption.[5] Mitch-

(1984). The regulations provide that claims against such institutions shall be evaluated "under the laws of the state in which the principal office of the institution in receivership is located." 12 C.F.R. § 569a.7(a)(2).

4. ILL.ANN.STAT. ch. 17, §§ 3001 *et seq.*

5. Illinois Savings and Loan Act, § 4–7, ILL.ANN. STAT. ch. 17, § 3098 provides the following:
   § 4–7. Retirement or Reduction of Permanent Reserve Capital.
   (a) The board of directors of an association operating with permanent reserve capital may propose an amendment to the articles of incorporation providing for the retirement of all of the permanent reserve capital, and a detailed plan for effectuating such amend-

ell Investment concedes that Telegraph Savings is governed by the Act.[6] The record contains no evidence that Telegraph Savings complied with the statutory procedure for retiring or redeeming the permanent reserve shares held by Mitchell Investment. Since the subscription agreement provides that the redemption payments are subject to restrictions imposed by state statutes, securing the approval of the Commissioner is in the nature of a condition precedent to the obligation of Telegraph Savings, or its successor or assign, to redeem the stock. Absent proof of compliance with this condition precedent, the Court is precluded from reaching the issue of the FSLIC's alleged breach or unjust enrichment. If the FSLIC has any contractual obligation—a question we do not reach—that obligation would arise only after the Commissioner approves the redemption plan. *See* RESTATEMENT (SECOND) OF CONTRACTS § 225(1) (1981) (performance of a duty subject to a condition cannot become due unless the condition occurs or non-occurrence is excused). The positive

law of Illinois cannot be abrogated by private contract.

### III.

The FSLIC argues that the redemption agreement is unenforceable under the Illinois Business Corporation Act,[7] which provides in part that "[n]o purchase of [a corporation's] own shares shall be made at a time when the corporation is insolvent or when such purchase would render the corporation insolvent." [8] In a related proceeding concerning the propriety of the takeover of Telegraph Savings, the Seventh Circuit Court of Appeals affirmed a finding that at the time of the takeover Telegraph Savings was insolvent. *See Telegraph Savings*, 703 F.2d at 1027–29. Such a finding is not part of the record in this case, however, because the parties did not see this as an issue in the District Court. Absent evidence of insolvency in this record, the Court will pretermit resolution of this issue.[9]

---

ment. The resulting capital of the association shall be not less than the minimum initial capital which the association, if it were being organized, would be required to have by the Commissioner under this Act. The proposal shall be submitted to the Commissioner for his approval.

(b) If the Commissioner approves the proposal, the association's board of directors may request in writing an appraisal of the value of the permanent reserve shares; and the Commissioner then shall cause such an appraisal to be made, allowing proper credit to such shares from the association's segregated surplus, if any exists, and from other reserves and undivided profits. The value of the permanent reserve shares so determined may be considered in the further proceedings under this section.

(c) The proposal then may be submitted to the members at an annual or special meeting. It shall be adopted upon receiving in the affirmative the votes of the holders of two-thirds or more of the outstanding permanent reserve shares, and also two-thirds or more of the total number of votes which all other members of the association are entitled to cast thereon. The proposal takes effect upon completion of the procedure provided in this Act for the amendment of articles of incorporation.

(d) An association may amend its articles of incorporation, in accordance with the pro-

cedure provided in this Act for such amendments, to reduce its permanent reserve capital, but in no event to an amount which is less than the minimum permanent reserve capital which the association would be required by this Act to issue if it were newly authorized to issue permanent reserve capital.

6. Letter to the Court from the Appellant, May 15, 1984, at 2.

7. ILL.ANN.STAT. ch. 32 §§ 157.1 *et seq.* (Smith-Hurd 1981).

8. *Id.* § 157.6. Section 58 of the Act, ILL.ANN.STAT. ch. 32, § 157.58, further provides in part that

No redemption or purchase of redeemable shares shall be made which will reduce the remaining assets of the corporation below an amount sufficient to pay all debts and known liabilities of the corporation as they mature, except such debts and liabilities as have been otherwise adequately provided for, or which will reduce the net assets below the aggregate amount payable to the holders of shares having priority or equal rights to the assets of the corporation upon dissolution.

9. The FSLIC does not argue that we should give collateral estoppel effect to the holding in *Telegraph Savings* that the association was insolvent. Mitchell Investment was not a party to the *Telegraph Savings* action.

## IV.

For the reasons stated above, the judgment of the District Court is affirmed, but without prejudice to Mitchell Investment to bring another action after complying, if possible, with the Illinois statutory procedure for redemption of the permanent reserve shares.[10]

Collateral estoppel is not generally applicable unless there exists either identity or privity between the parties to the relevant litigation. The person being estopped from relitigating an issue must have been either a party to the prior lawsuit or have been so closely related to the interest of the party to be fairly considered to have had his day in court. *In Re Gottheiner,* 703 F.2d 1136, 1139 (9th Cir. 1983) (citations omitted). However, the concept of privity recognizes that a major shareholder often is the alter-ego of the corporation, *id.* at 1140, and privity can be presumed. If a subsequent action is filed by Mitchell Investment, *see* note 10 *infra,* the FSLIC may present a collateral estoppel argument.

**10.** If such an action is filed, the FSLIC may present evidence of insolvency and its argument that the redemption agreement is void under Illinois law as against the public policy of the state. *See American Heritage Investment Corp. v. Illinois National Bank of Springfield,* 68 Ill. App.3d 762, 25 Ill.Dec. 431, 386 N.E.2d 905, 910 (Ill.App.Ct.1979) (contracts by corporations to redeem stock in the face of insolvency are void as against public policy and will not be enforced); *In re Penfield Distilling Co.,* 131 F.2d 694, 699 (6th Cir.1942) ("shareholder may not, in face of insolvency of the company, change his relation from that of shareholder to that of creditor, escaping the responsibilities of the one and receiving the benefits of the other").