NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0658n.06
Filed: September 5, 2007

Nos. 05-4418, 06-3163 and 06-3166

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LIVING CARE ALTERNATIVES OF KIRKERSVILLE, INC. (05-4418), | ) ) ) | |
| and | ) ) | |
| LIVING CARE ALTERNATIVES OF UTICA, INC. (06-3163 and 06-3166), | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Plaintiffs-Appellants, | ) ) ) | OPINION |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant-Appellee. | ) ) ) | |

**Before: GIBBONS and McKEAGUE, Circuit Judges; and BUNNING, District Judge.**[*]

**DAVID L. BUNNING, District Judge.** In these consolidated appeals, Plaintiffs-Appellants Living Care Alternatives of Kirkersville, Inc. ("Living Care Kirkersville") and Living Care Alternatives of Utica, Inc. ("Living Care Utica") appeal the district courts' summary affirmances of the Internal Revenue Service ("IRS") Appeals Officers' administrative decisions upholding the filing of tax levy and/or lien notices against them. The Government argues the district courts properly concluded that the matters raised by Living Care Kirkersville and Living Care Utica were previously litigated in *Living Care*

---

[*]The Honorable David L. Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

*Alternatives of Utica, Inc. v. United States*, 411 F.3d 621 (6th Cir. 2005), and are, therefore, barred by collateral estoppel. In the alternative, the Government argues that the Appeals Officers did not abuse their discretion in concluding that the need for the efficient collection of taxes outweighs Appellants' concern that the collection action be no more intrusive than necessary.

Appellants, on the other hand, offer that the doctrine of collateral estoppel does not apply because the facts and issues in these consolidated cases are different from those in *Living Care Alternatives of Utica*. Moreover, Appellant Living Care Kirkersville maintains that privity between it and Living Care Utica to collaterally estop its challenges is lacking. Absent application of collateral estoppel, they contend the IRS Appeals Officers abused their discretion by confirming a tax collection method that would destroy their businesses, yet yield nothing in tax collections.

For the reasons that follow, this Court AFFIRMS the respective district court decisions.

## I. BACKGROUND

Living Care Kirkersville and Living Care Utica are Ohio corporations. Each operates long-term nursing care facilities in Licking County, Ohio. The sole shareholder and officer of both corporate entities is Thomas J. Rosser ("Rosser"). Medicaid payments are the primary funding source for each facility. According to Appellants, each facility is struggling financially, due in large part to the substantial government regulation of nursing homes and insufficient government payment under Medicaid to maintain regulatory compliance and also generate a profit.

## A.  The Living Care Utica Proceedings

Living Care Utica has initiated four district court actions challenging tax liens and levies for unpaid employment taxes and unemployment tax liabilities.[1]  The first two district court cases were consolidated by this Court.  Case No. 04-3194 (*Living Care Utica I*) involved annual payments for tax year 1999 and quarterly payments in 1999 and 2001.  Case No. 04-3554 (*Living Care Utica II*) involved annual payments for tax years 1995, 1998, and 2000, and quarterly taxes for various quarters in 1995, 1996, 1999, 2000 and 2001.  That consolidated appeal culminated in this Court's decision in *Living Care Alternatives of Utica v. United States*, 411 F.3d 621 (6th Cir. 2005).

The later two district court appeals, Case No. 06-3163 (*Living Care Utica III*) and Case No. 06-3166 (*Living Care Utica IV*), were consolidated by both the district court and this Court.  *Living Care Utica III* involves quarterly employment taxes for fourth quarter 2001 and first quarter 2002 and annual unemployment taxes for 2001.  *Living Care Utica IV* involves quarterly employment taxes for the second quarter of 2002.

On July 31, 2002, the IRS, in *Living Care Utica III*, sent Living Care Utica a final notice of intent to levy with respect to certain taxes, with a notice of federal tax lien filing for these liabilities subsequently sent on August 15, 2002.  The IRS on September 25, 2002, sent Living Care Utica a final notice of intent to levy with respect to the remaining taxes at issue in that case, with a notice of federal tax lien filing for these liabilities subsequently sent on October 4, 2002.

---

[1]There was a fifth Living Care Utica district court case, but that action was voluntarily dismissed upon recognition that it challenged an IRS notice duplicating that issued in Sixth Circuit Case No. 06-3163.

On April 17, 2003, the IRS, in *Living Care Utica IV*, sent Living Care Utica a notice of federal tax lien with respect to the taxes at issue in that case.

Pursuant to 26 U.S.C. § 6320, each of the various IRS notices advised Living Care Utica of its right to a collection due process ("CDP") hearing with respect to the proposed levy and/or federal tax lien filings identified in the notices. Living Care Utica timely submitted forms requesting CDP hearings in both *Living Care Utica III* and *Living Care Utica IV*. In submitting those forms, Living Care Utica also identified by attachment the grounds upon which it was seeking further review.

In *Living Care Utica III,* the Appeals Officer conducted the CDP hearing on March 13, 2003, via telephone, after which on June 18, 2003, he issued a Summary and Recommendation addressing the various challenges raised by Living Care Utica and concluding that the levy and federal tax lien filings should be sustained. (Utica J.A. 280-85). His Summary and Recommendation was attached to the July 9, 2003, Notice of Determination sent by the IRS to Living Care Utica. (J.A. 279).

More particularly, Living Care Utica protested that its failure to pay payroll taxes was the result of decreased funding from government sources with no corresponding decrease in operating expenses. The Appeals Officer concluded that this calculated business decision to pay other debts instead of turning over withheld taxes was neither justification nor reasonable cause. Living Care Utica pointed to prior dealings with the IRS wherein an installment agreement was reached. However, the Officer concluded the prior dealings did not involve the tax periods at hand and were therefore not relevant to providing a basis for present relief. Living Care Utica pointed out various factors contributing to its overall negative cash flow and consequent lack of funds to cover operating expenses. The Officer

concluded these circumstances merely evidenced that an installment agreement was not a viable collection alternative, rather than providing a basis to grant Living Care Utica relief from the liens.

Living Care Utica also complained that the existing IRS liens prevent it from refinancing its real and personal property, the funds from which could be used to pay the taxes. But the Officer concluded that none of the circumstances of 26 U.S.C. § 6323(j) were present to sustain withdrawing the liens, and that since Living Care Utica reported there were other liens senior to those of the IRS, leaving its liens in place was reasonable to ensure preserving the Service's claim in the event of private sale. Living Care Utica also suggested that its Medicare and Medicaid payments may be exempt from levy. The Officer disagreed.

Finally, the Summary and Recommendation noted that, at hearing, Living Care Utica proposed filing an offer in compromise or private sale of the business as collection alternatives. But the Officer concluded that private sale was not a viable alternative, since the business had been for sale over two years at that point with no buyers. And as to the offer in compromise, the Officer concluded this was not a realistic alternative, since the required forms had been sent to Living Care Utica with no specific follow up by either the designated submission deadline or the time thereafter within which Living Care Utica stated that a formal offer would be forthcoming. The report concluded with the Officer's brief discussion of whether the need for efficient tax collection had been balanced with Living Care Utica's concern that the proposed collection action be no more intrusive than necessary. He found this requirement met, since Living Care Utica had not provided proper documentation to evaluate proposed collection alternatives.

In *Living Care Utica IV,* the Appeals Officer conducted the CDP hearing on October 16, 2003, via telephone, after which she issued a report recommending that the subject federal tax lien filing be sustained. Her report and recommendation was attached to the November 24, 2003, Notice of Determination sent by the IRS to Living Care Utica.

The Officer's report concluded Living Care Utica raised no relevant challenges to the collection action and that none of the grounds for withdrawal of the lien pursuant to § 6323(j) had been shown. Although not outlined in the same detail as the Officer's report in *Living Care Utica III,* the challenges raised by Living Care Utica and rejected mirror those it raised in the prior proceeding. Namely, its attachment to its CDP hearing request identified it intended to propose an offer in compromise or sale or refinance as a collection alternative; that the lien was obstructing it from procuring refinancing; that the IRS would receive no revenue due to senior lienholders; and that it was unable to meet its tax obligations due to financial problems from over-regulation and under-funding by the government. In balancing the need for efficient collection with Living Care Utica's concern that the collection action be no more intrusive than necessary, the Appeals Officer noted that the lien was filed because Living Care Utica's tax liability was accruing, and therefore protection of the tax liability was necessary. She noted that Living Care Utica had failed to submit sufficient documentation to establish that withdrawing the lien would facilitate a viable collection alternative nor was it compliant with current tax filing and deposit requirements to qualify to submit an offer in compromise. The Officer's report reflects that she attempted but was unsuccessful in reaching Living Care Utica to discuss the fact that an offer in compromise was not processable.

Following the IRS's issuance of Notices of Determination in *Living Care Utica III* and *IV,* Living Care Utica appealed each of these determinations to the district court for the Southern District of Ohio, challenging the IRS Appeals Office determinations. The district court consolidated the two appeals and stayed a ruling pending this Court's decision in *Living Care Alternatives of Utica*. Living Care Utica did not object to this stay.

This Court subsequently held in *Living Care Alternatives of Utica v. United States* that Living Care Utica failed to challenge its underlying tax liability at the collection due process hearing, and therefore, the standard of review was abuse of discretion; the Appeals Officer did not violate his statutory duty to balance the equities; the IRS did not have a duty to investigate existing liens on property prior to a collection due process hearing; the Appeals Officer's Notice of Determination provided sufficient notice for an abuse of discretion standard; and the Appeals Officer did not abuse his discretion in rejecting Living Care Utica's offer of compromise. 411 F.3d 621. Following the issuance of that decision, the Southern District of Ohio on November 14, 2005, entered its Memorandum and Order in *Living Care Utica III/IV.* The district court found that all nine of the claims raised by Living Care Utica in *Living Care Utica III/IV* were barred by collateral estoppel because they had been raised, litigated, and decided in *Living Care Alternatives of Utica*, with the exception of claim two regarding Living Care Utica's purported inability to refinance due to the presence of the IRS liens. And as to the second claim, the district court found that the Appeals Officers did not abuse their discretion in rejecting Appellant's contention, when there was nothing in the record to support a finding that removing the liens and refinancing the property would have facilitated the collection of the tax liability.

The Government's motions for summary affirmance in *Living Care Utica III* and *IV* were therefore granted by the district court.  Appeals 06-3163 and 06-3166 followed.

**B.      The Living Care Kirkersville Proceedings**

The Living Care Kirkersville case arises from its failure to pay quarterly employment taxes for March 2000 through March 2001 and its annual unemployment tax liabilities for the year 2000.  On August 11, 2003, the IRS sent Living Care Kirkersville a final notice of federal tax lien filing, which notice also advised of the right to a CDP hearing.  Living Care Kirkersville timely submitted a CDP hearing request on September 12, 2003, identifying its grounds for challenging the tax lien filing against it.  A hearing officer with the Office of Appeals conducted the CDP hearing and subsequently issued a Summary and Recommendation to continue the subject federal tax lien filing.  (Kirkersville J.A. 35-38).  This Summary and Recommendation was attached to a March 18, 2004, Notice of Determination letter sent by the IRS to Living Care Kirkersville informing it that the notice of federal tax lien was being upheld with respect to its tax liability.  (Kirkersville J.A. 33-34).

Living Care Kirkersville's attachment of purported relevant considerations is substantially similar to that attached to the hearing requests in *Living Care Utica III/IV*.  (*Compare* Kirkersville J.A. 40-45 *with* Utica J.A. 272-75).  The points presented by Living Care Kirkersville can be summarized as inability to meet tax obligations because of over-regulation and inadequate funding by the government; existence of senior lienholders, resulting in no leftover revenue for this tax lien; inability to obtain refinancing and consequent closure of the nursing home by continued imposition of the lien; and a proposed offer in compromise, sale, or refinancing as an alternative to the collection action.

-8-

The Appeals Officer's Summary and Recommendation rejected each of Living Care Kirkersville's challenges. As to the proposed collection alternative of an offer in compromise, Living Care Kirkersville had not evidenced a definite intention to submit an offer in compromise and the related financial information. As to the alternative of refinancing, the summary reflected Living Care Kirkersville had not evidenced how refinancing would result in funds to pay the IRS. The Appeals Officer also concluded that withdrawing the lien to facilitate refinancing was not warranted, because Living Care Kirkersville had failed to provide a specific refinancing arrangement rather than a general assertion, and because it could apply for a certification of subordination of the tax lien and had not done so. Nor did the Appeals Officer agree that withdrawing or removing the lien was warranted due to the existence of senior lienholders that rendered the tax lien valueless, since the presence of such senior lienholders, if documented, actually supported the conclusion that the notice of lien was necessary to protect the government's interest pending payment of the taxes. And while Living Care Kirkersville advocated that its status as operator of a nursing home should afford it special consideration under the tax laws, the Appeals Officer concluded no lawful authority for affording special rights to such a taxpayer had been identified. Finally, the Appeals Officer noted that Living Care Kirkersville had not offered an alternative that would provide for the efficient collection of the outstanding taxes and also be less intrusive on it. Moreover, withdrawing the notice of federal tax lien would not serve to balance efficient tax collection against intrusiveness since there were other prior notices that would remain, and removing all of these notices would place the Government in a precarious position vis-à-vis other creditors and effectuating collection.

-9-

On April 16, 2004, Living Care Kirkersville filed a complaint with the district court, challenging this IRS Appeals Office determination. On November 8, 2004, the Government filed a Motion and Supporting Memorandum of Law for Summary Affirmance of the IRS Administrative Decision. In an Opinion and Order dated August 29, 2005, the district court found in favor of the IRS. (Kirkersville J.A. 74-80). The district court concluded that Living Care Kirkersville is in privity with Living Care Utica and that the issues raised by Living Care Kirkersville were the same as those raised by Living Care Utica in *Living Care Alternatives of Utica*. In the alternative, the district court found that even if the doctrine of collateral estoppel did not apply, the Appeals Officer's decision to uphold the IRS collection action was not an abuse of discretion because removal of the lien would place the Government in a precarious situation with respect to competing creditors. Appeal 05-4418 followed.

## II. ANALYSIS

### A. Standard of Review

In cases involving CDP hearings, courts conduct a *de novo* review of IRS Appeals Office determinations when the underlying tax liability is at issue. However, when the underlying tax liability is not at issue, such decisions are reviewed for abuse of discretion. *Living Care Alternatives of Utica*, 411 F.3d at 625. In these consolidated appeals, Living Care Utica and Living Care Kirkersville do not challenge liability for the actual tax. Therefore, the IRS Appeals Office determinations in contest are reviewed under an abuse of discretion standard.

-10-

These appeals differ from this Court's earlier decision in *Living Care Alternatives of Utica* in that each raises questions as to the proper scope of collateral estoppel. A lower court's decision on whether collateral estoppel applies is reviewed *de novo*. *Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 851 (6th Cir. 1997). This includes appellate review of a tax court's decision on the doctrine. *Hickman v. Comm'r*, 183 F.3d 535, 537 (6th Cir. 1999). Embodied within consideration of the conditions giving rise to collateral estoppel is the requirement of privity – that the party to be estopped was the party in the prior litigation, or in privity with such prior party. *Montana v. United States,* 440 U.S. 147, 153 (1979). Whether privity exists in a particular case is a question of fact, and questions of fact are reviewed for clear error. *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir. 1981).

## B.      Collateral Estoppel

Since collateral estoppel would render merits consideration a nullity on any issues so barred, its application is considered first. Its invocation dictates that a "'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . .'" *Montana*, 440 U.S. at 153 (quoting *Southern Pacific R. Co. v. United States,* 168 U.S. 1, 48-49 (1897)). While res judicata acts to bar a party's later claims based on the same cause of action, collateral estoppel serves to bar the relitigation, on a different cause of action, of issues actually and necessarily determined by a prior court. *Id.*

Collateral estoppel applies where the following conditions are met: (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation; (2) the issue

-11-

must have been actually litigated and decided in the prior action; (3) the issue must have been necessary and essential to a judgment on the merits in the prior litigation; (4) the party to be estopped was a party to the prior litigation, or in privity with such a party; and (5) the party to be estopped had a full and fair opportunity to litigate. *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir. 2005); *United States v. Real Property Known and Numbered as 415 E. Mitchell Ave.*, 149 F.3d 472, 476 (6th Cir. 1998). Moreover, "[t]he doctrine applies to tax proceedings to the same extent it applies to proceedings in federal district court." *Hickman*, 183 F.3d at 537.

### 1.     Living Care Utica

In *Living Care Utica III/IV,* Living Care Utica is the same party as in *Living Care Utica I/II*, and therefore privity is not in issue or contested. Nevertheless, Living Care Utica does protest that the issues in *Living Care Alternatives of Utica* that were necessary and essential to a judgment on the merits and that were actually litigated and decided after full and fair opportunity are not identical to those raised by it in the instant consolidated appeals.

In *Commissioner v. Sunnen*, the United States Supreme Court  cautioned that

> [w]here two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.

333 U.S. 591, 599-600 (1948); *see also Kennedy v. Comm'r,* 876 F.2d 1251, 1257 (6th Cir. 1989). Living Care Utica submits that its issues are not "identical in all respects" to those presented in *Living Care Alternatives of Utica* because the cases involve different tax

-12-

years, different facts, and different hearing officers conducting different analyses. However, *Sunnen* refers to an identity in the *matter raised*, without change in *controlling* facts, rather than identity of each and every fact. Nor must the presiding decision maker be the same in order to invoke collateral estoppel. Under Appellant's theory, neither collateral estoppel nor res judicata would virtually ever apply in tax proceedings. And as to Appellant Living Care Utica's belief that appeals officers' analyses are "different" unless each nuance considered in its later tax challenges replicates those from *Living Care Alternatives of Utica,* no authority is put forth for such proposition. If such identity were required, it would be particularly problematic in establishing collateral estoppel in collection due process proceedings such as these, because of the deferential review Congress contemplated would be given to tax appeals versus other agency decisions. *Living Care Alternatives of Utica,* 411 F.3d at 625 ("Judicial review of collection due process hearings" historically "involved very little judicial oversight," consequently resulting in "a surprisingly scant record.").

The Supreme Court has established a three-part test to determine if applying collateral estoppel is also appropriate: (1) "whether the issues presented by [the subject] litigation are in substance the same as those resolved [in the prior case]"; (2) "whether controlling facts or legal principles have changed significantly since the [prior] judgment"; and (3) "whether other special circumstances warrant an exception to the normal rules of preclusion." *Montana,* 440 U.S. at 155.

As noted, the district court presiding over *Living Care Utica III/IV* identified nine claims presented by Living Care Utica in those consolidated administrative appeals. The

district court summarized the claims presented by Living Care Utica on appeal as: (1) because there are senior lienholders, the IRS would not realize any tax revenue from the levy or liens; (2) the liens have harmed Living Care Utica by preventing refinancing; (3) Medicaid and Medicare funds are exempt from levy; (4) Living Care Utica's inability to pay the taxes is the result of extensive government regulation in the field; (5) the IRS wrongly rejected an offer in compromise; (6) the IRS should have accepted Living Care Utica's plan to maintain the business and sell it as an ongoing concern; (7) the IRS abused its discretion in making a determination to sustain the levy and liens; (8) Living Care Utica's plan to sell the business as an ongoing concern will net more tax revenue; and (9) Living Care Utica contests the underlying tax liability. (Utica J.A. 205-06). As the district court correctly identified, all of the claims presented to it by Living Care Utica, with the exception of the second claim, at least nominally were resolved in *Living Care Alternatives of Utica,* thus satisfying *Montana*'s first requirement. Even though the tax years in these appeals differ from those at issue in *Living Care Utica I/II,* the tax circumstances which faced Living Care Utica, and the points and defenses raised by Rosser on behalf of it in anticipation of the hearing and pursuant to the statutory provision to raise "any other relevant issue relating to the unpaid tax," 26 U.S.C. § 6330(c)(2)(A), are all matters that are "in substance" the same as those raised in *Living Care Utica I/II.*

As to the first, third, and fourth claims, courts in the prior *Living Care I/II* litigation determined that Living Care Utica's claims failed as a matter of law. *See Living Care Alternatives of Utica*, 411 F.3d at 626, 628 (holding that even if the inability to pay was the result of government regulation, it would not excuse the tax liability and that there is no

-14-

requirement that the United States consider whether it will receive any revenue from the levy); *Living Care Alternatives of Utica, Inc. v. United States*, No. 03-0359, 2003 WL 23311523, *4 (S.D. Ohio Dec. 12, 2003) (holding that Medicaid and Medicare funds are subject to levy and that even if the inability to pay was the result of government regulation, it would not excuse the tax liability). Therefore, as to the second part of *Montana*'s three-part test, no controlling facts are relevant and collateral estoppel is appropriate for these claims.[2]

As to the fifth, sixth, and eighth claims, this Court previously held that the Appeals Officer had not abused his discretion by refusing the alternatives presented by Living Care Utica because it had previously defaulted under an installment payment plan and it had an escalating amount of unpaid tax liability. *See Living Care Alternatives of Utica*, 411 F.3d at 631. The facts that justified the Officer's prior decision remain unchanged. Therefore, part two of *Montana*'s three-part test is satisfied and so collateral estoppel is also appropriate for these claims.

Living Care Utica's ninth claim in the district court challenged its underlying tax liability. However, Living Care Utica no longer presents this as a direct challenge or issue on appeal to this Court.

---

[2]As to the third consideration, "whether other special circumstances warrant an exception to the normal rules of preclusion," *Montana,* 440 U.S. at 155, Living Care Utica points to no special circumstance aside from its general contention that poor congressional public policy in the regulation of nursing homes when balanced with the imposition of tax obligations upon such homes constitutes special circumstances to overlook this Court's prior judgment. This legislative conundrum is not so much presented by Appellant as a special circumstance to except the application of collateral estoppel as it is a basis for asking this Court to legislate specialized tax laws for the nursing home industry, which of course we will not do.

As to Living Care Utica's seventh claim – that the IRS abused its discretion in making a determination to sustain the levy and liens – the judgment in *Living Care Alternatives of Utica* arguably relied on different facts than those presented in this case. That is, in previously deciding that the IRS did not abuse its discretion in making the determination to sustain the levy and liens, this Court reviewed the reasoning of that appeals officer's decision. *See id.* at 630. On the one hand, this case presents different decisions rendered by appeals officers not involved in the prior judgment. Whether the appeals officers in *Living Care Utica III/IV* abused their discretion depends upon the reasoning of these particular officers. In other words, even though the appeals officers arrived at the same ultimate conclusion as the appeals officer in the prior litigation, it is possible that the appeals officers abused their discretion in the reasoning justifying that conclusion. Therefore, in this sense it is inappropriate to apply collateral estoppel.

On the other hand, and as previously discussed, the same decision maker or identity in reasoning (as opposed to identity in the controlling facts or legal principles) is not a required condition to invoke collateral estoppel. Essentially this seventh claim is an all-encompassing one, sweeping within it the various other challenges to the administrative decision raised by Appellant Living Care Utica. Blanket rejection of collateral estoppel amounts to an end run around applying the doctrine to particularized arguments. As a practical matter, in this appeal Living Care Utica has already been collaterally estopped from relitigating arguments upon which it now relies to argue why the appeals officers abused their discretion in determining to sustain the levy and liens. The one exception is that of claim two concerning the refinancing. The district court correctly observed that this

claim was not presented in *Living Care Utica I/II*, and so collateral estoppel does not apply. Merits consideration of this claim is set forth below in this decision.

In summary, all but the second claim raised by Living Care Utica are issues that were litigated in *Living Care Utica I/II* and decided by this Court in *Living Care Alternatives of Utica.* They are in substance the same as issues raised presently by Living Care Utica in *Living Care Utica III/IV*. The controlling facts and/or applicable legal rules remain unchanged, with no special circumstances having been shown to except imposing upon Living Care Utica the determinations for these issues from the prior judgment. Therefore, Living Care Utica's claims on appeal, with the exception of its challenge concerning the refinancing, are barred by the doctrine of collateral estoppel.

### 2. Living Care Kirkersville

Analyzing whether Living Care Kirkersville is bound by the courts' prior adjudications in *Living Care Utica I/II* gives rise to considerations different from those for Living Care Utica. Living Care Kirkersville presents an identical set of claims in challenging the IRS Appeals Office decision as did Living Care Utica. (Kirkersville J.A. 6-11). In adjudicating Living Care Kirkersville's appeal of the decision, the district court concluded that it was in privity with Living Care Utica. The judge noted, and it is undisputed, that Rosser is the sole shareholder and officer of both Living Care Kirkersville and Living Care Utica and that Rosser represented both companies in the CDP hearings. But Living Care Kirkersville maintains that the district court erred in finding that it was in privity with Living Care Utica and thereby proceeding to apply collateral estoppel principles. And, unlike the district court in *Living Care Utica III/IV*, the district court in *Living Care Kirkersville* applied collateral

estoppel to all of the claims, including the second claim concerning the refinancing.  This issue was not presented in the prior litigation, and collateral estoppel should not be applied, as noted by the district court in *Living Care Utica III/IV*.  (Utica J.A. 208).

Collateral estoppel is

"not generally applicable unless there exists either identity or privity between the parties to the relevant litigation.  The person being estopped from relitigating an issue must have been either a party to the prior lawsuit or have been so closely related to the interest of the party to be fairly considered to have had his day in court."

*Mitchell Inv. Co. v.  Fed. Sav. & Loan Ins. Corp.*, 741 F.2d 107, 110 n.9 (6th Cir. 1984) (citing *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983)).

*Montana* suggests that whether one is in "privity" with a prior party so as to be collaterally estopped from relitigating issues is driven by that person's involvement in the prior litigation.  In particular, can the interests of common-law adjudication fairly be said to be implicated as to that person; namely, protecting adversaries from the inconvenience and expense of multiple suits, conserving judicial resources, and minimizing the possibility of inconsistent decisions thereby fostering reliance on judicial action, where a party has had a full and fair opportunity to litigate.  *Montana,* 440 U.S. at 153-54.

These interests are similarly implicated when nonparties assume control over litigation in which they have a direct financial or proprietary interest and then seek to redetermine issues previously resolved. . . . [T]he persons for whose benefit and at whose direction a cause of action is litigated cannot be said to be "strangers to the cause. . . . [O]ne who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record."

-18-

*Id.* at 154 (quoting *Souffront v. Compagnie des Sucreries,* 217 U.S. 475, 487 (1910)). As this Court has previously noted, "'Privity' is an ambiguous term, a shorthand designation for those persons who have a sufficiently close relationship with the record parties to be bound by the judgment." *Vulcan,* 658 F.2d at 1109 (internal quotation and citation omitted).

There are three categories of privity recognized in this Circuit: (1) "*successors in interest* to a party will be bound by a judgment against that party"; (2) "a nonparty who *controlled* the original suit will be bound by the resulting judgment"; or (3) "a nonparty who is *adequately represented* by a party will also be precluded from relitigating the same issues." *Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 193 F.3d 415, 422 (6th Cir. 1999). The first category does not apply in this case. The Government argues that Living Care Kirkersville's claims are barred by the doctrine of collateral estoppel because it and Living Care Utica are in privity with one another via their shared sole shareholder and officer, Rosser. This basis, which was accepted by the district court in finding privity and applying collateral estoppel, would seem to be based upon privity under categories two or three.

Under the second category, collateral estoppel is applied to nonparties that "assume[d] control over [the prior] litigation in which they ha[d] a direct financial or propriety interest." *Montana,* 440 U.S. at 154. "Privity exists when there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest. When a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest." *In re Gottheiner,* 703 F.2d at 1140.

In understanding how the second category is applied, this Court in *Becherer* explained that "'[t]o have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain review.'" *Becherer,* 193 F.3d at 423 (quoting *Benson and Ford, Inc. v. Wanda Petroleum Co.,* 833 F.2d 1172, 1174 (5th Cir. 1987) (citation omitted)). Examples of relationships providing such sufficient control include "president/sole shareholder and his or her company, a parent corporation and its subsidiary, an indemnitor and its indemnitee, or a liability insurer and an insured." *Id.*

The Government relies upon cases that have held that the owner of a corporation is in privity with the corporation for purposes of collateral estoppel when the owner exercises complete ownership and control of the corporation. *Mitchell Inv. Co. v. Fed. Sav. & Loan Ins. Corp.,* 741 F.2d at 110 n.9 (referencing *In re Gottheiner,* 703 F.2d at 1139); *Kreager v. Gen. Elec. Co.,* 497 F.2d 468, 472 (2d Cir. 1974) (finding sole shareholder and officer who controlled action involving corporation "had an identity of interest with [the company] and was bound by judgment against it"). But these authorities offered by Appellee do not support the expansion of the concept of privity posed by the Government here. The Government fails to cite authority from this Court or elsewhere that applies collateral estoppel to a legally distinct, nonparty corporation because of a judgment against another similar corporation with which it shares a common sole shareholder/officer. While Rosser may have had sufficient interest in and "control" over the prior Living Care Utica litigation due to his status as its sole shareholder and officer such as to find him in privity with Living Care Utica, that is not the extension of privity that Appellee seeks here. It seeks to extend privity to Living Care Kirkersville, but this separate corporation did not have a

-20-

direct financial or proprietary interest in nor control over the prior Living Care Utica litigation as is necessary in order to impose privity under the second category.

The other manner of seeking to establish that Living Care Kirkersville is in privity with Living Care Utica is by virtue of their "sister" corporate relationship – mirror business operations via the same owner. This arguably implicates *Becherer*'s third category; that is, binding a nonparty who is adequately represented by a party to the prior litigation, sometimes referred to as "virtual" representation. *See Becherer*, 193 F.3d at 423. This presents the question of whether privity should be found between corporate entities with similar purposes and common ownership, by posing that the nonparty corporation's interest, via its common ownership and business purposes, was adequately represented in prior litigation by a sister corporation presenting identical issues. Because Living Care Kirkersville was not an uninvolved curious observer of the outcome of the Living Care Utica tax proceedings, application of this third category arguably has some appeal. Living Care Kirkersville is a corporation that owns and operates a mirror image business through the direct, personal efforts of shared sole owner and officer Rosser. The issues and concerns identified and articulated by Rosser on behalf of each corporation are virtually identical.

*Becherer* describes this third privity category of adequate or virtual representation as requiring "'an express or implied *legal* relationship in which parties to the first suit are *accountable* to non-parties who file a subsequent suit raising identical issues.' [*Benson and Ford*, 833 F.2d at 1175 (emphasis added) (citation omitted). This third category may also be established by a nonparty's express agreement to be bound by or acquiescence to a party's representation. *See, e.g.,* RESTATEMENT (SECOND) OF JUDGMENTS § 40 (1980)." *Becherer,* 193 F.3d at 423. In this case, while Rosser serves as the sole owner

and officer of both corporations, this fact alone creates neither an express nor an implied legal relationship making Living Care Utica accountable to Living Care Kirkersville. Nor is there any evidence that Living Care Kirkersville expressly agreed to be bound by or acquiesced in Living Care Utica's representation. Certainly, corporate entities may have an interest in the same legal issue or in proving or disproving similar facts, but this should not be and is not sufficient to establish privity between them, even where they may have common ownership. We will not view the mere fact of common corporate ownership as amounting to an express agreement, particularly given *Becherer*'s caution that "absent an express agreement to be bound, an agreement should not be inferred "'*except upon the plainest circumstances.'*" *Becherer,* 193 F.3d at 423 ((quoting *Bittinger v. Tecumseh Prods. Co.,* 123 F.3d 877, 882 (6th Cir. 1997) (emphasis in original) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 40 cmt. b)). To extend privity to the common ownership of sister corporations present here, without more, also raises due process concerns. Applying privity between commonly-owned corporations requires proof that the nonparty must have been "so closely related to the interest of the party to be fairly considered to have had his day in court." *Mitchell,* 741 F.2d at 110 n.9. It is not reasonable to conclude from this record that this has occurred. The Government would have the court extend privity to Living Care Kirkersville and thereby estop it from having its day in court on the basis that its owner also owns and operates other similar corporations. To do so, without more, is surely an overly broad extension of the concept of privity that could unfairly subject business owners to legal obligations or obstacles without due process, something this Court will not do.

In summary, the Court finds that Living Care Kirkersville lacks sufficient privity with Living Care Utica to apply collateral estoppel from the prior litigation. Although it is possible that a more careful examination of the interests involved in this case could have demonstrated sufficient commonality of interests, that evidence is lacking in this record. Therefore, in the absence of a presumption of commonality of interest, the fact that Living Care Kirkersville's sole shareholder can be collaterally estopped by prior litigation is insufficient to bind Living Care Kirkersville.

## C.    Merits Review

The CDP hearing procedure requires that the Appeals Officer verify the IRS has satisfied (1) all legal and procedural requirements to proceed with a levy/lien, (2) consider any defenses and collection alternatives offered, and (3) determine whether the "proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3) (the "balancing test").

Living Care Utica and Living Care Kirkersville both argue that the Appeals Officers abused their discretion in upholding the collection actions against them. As analyzed hereinabove, Living Care Utica is collaterally estopped from presenting all its claims except the claim concerning its ability to refinance. Collateral estoppel does not apply to Living Care Kirkersville's claims, which include the same ability to refinance argument. On appeal to this Court, Living Care Kirkersville also protests that the Appeals Officer, in affirming the tax lien, abused his discretion in conducting the balancing test. It maintains that the Officer failed to give appropriate weight to the fact that there were other, senior liens to the IRS lien that exceeded receivables, meaning that the IRS would take nothing, and that

imposing the lien would essentially close the business, with no resulting funds for the IRS. Living Care Kirkersville further argued on appeal that viable collection alternatives, including sale of the business, refinancing, or an offer in compromise, do exist and were proposed yet not appropriately considered. Finally, it submits that the collection due process hearing system is inherently flawed because there is no recording required, which results in a lack of an adequate administrative record below for effective appellate review.

Living Care Kirkersville's last argument – regarding the informal nature of the proceedings and the lack of a sufficient administrative record – relates to the first factor of the CDP Appeals Officer's duties to ensure all legal and procedural requirements are met.[3] This same argument was also posed by Living Care Utica in cases *Living Care Utica I/II* and rejected by this Court in *Living Care Alternatives of Utica.* Appellant's reliance upon *Mesa Oil, Inc. v. United States*, 86 A.F.T.R.2d 7312 (D. Colo. 2000) is misplaced, given the distinctions in the notice of determination in that case compared with those in these appeals. The notice in *Mesa Oil* contained no factual details, legal analysis, or discussion of the balancing test. *Id.* at 7315-16. As this Court previously noted, "*Mesa Oil's* remand is an exception to the general practice of reviewing courts showing deference to the Appeals Officers' conclusions regarding the balancing analysis." *Living Care Alternatives of Utica,* 411 F.3d at 627-28. While the lack of a formal administrative record could make abuse of discretion review problematic, given the historically broad discretion in tax collection proceedings, appropriate due process is afforded unless the reviewing court is

---

[3]Arguably also included as part of this first factor is Living Care Kirkersville's argument on appeal that courts have rendered meaningless Congress's intent in enacting the Tax Reform Act; that is, to curb the excesses of the IRS. This policy argument is more appropriately left for Congress to consider, not us. *See* footnote 2.

"convinced that the type of taxpayer abuse that Congress sought to remedy has occurred in the case." *Id.* at 629. As in *Living Care Alternatives of Utica,* the Notices of Determination here fall short of the exceptional circumstances presented in *Mesa Oil* and "provide a sufficient basis for an abuse of discretion review, as that standard is applied in tax levy and lien appeals." *Id.*

The second and third factors addressed by the Appeals Officer can be reviewed together, given that the assessment and viability of proposed collection alternatives dovetails into consideration of whether the collection action is no more intrusive than necessary. Living Care Kirkersville argues that the Appeals Officer abused his discretion because he did not include the existence of senior lienholders in the balancing analysis and failed to consider that the net effect of the lien would be to shut down the business without generating any tax revenue for the Service. The Government counters that the district court properly concluded that the Appeals Officers did not abuse their discretion because the IRS is not required to consider whether it will receive revenue from the collection or whether the collection will negatively impact the taxpayer's business.

As this Court has noted, there is little about this requirement in Sixth Circuit case law and, in most cases, a reviewing court affirms the Appeals Officer's determination that the balancing test was correctly applied. *Living Care Alternatives of Utica*, 411 F.3d at 627. Current case law supports the Government's argument that the IRS is not required to include in its balancing analysis whether it "will receive any revenue from a levy or sale, or whether the business will have to close down due to the levy and sale." *Living Care Alternatives of Utica*, 411 F.3d at 628; *Medlock v. United States*, 325 F. Supp. 2d 1064,

1079 (C.D. Cal. 2003) (holding that the appeals officer was not required to consider the impact of a levy on the taxpayer's customers).

Appellants also complain that the Appeals Officers abused their discretion by preventing them from refinancing so as to pay the taxes, not allowing them to conduct a private sale to maximize proceeds, or refusing to accept an offer in compromise. The Appeals Officers reviewed each of these contentions, and it cannot be said that their rejection of each as a collection alternative was irrational or unreasonable. Each proposed alternative was presented by Appellants in general terms only, lacking the requisite specificity to permit the Appeals Officers to give informed consideration. Offers in compromise require specific, detailed submissions, which was not done by Appellants. Withdrawing liens as a prerequisite to refinancing was only presented by Appellants as being required by their particular bank, with no details about the rate and return to the IRS if the refinancing were provided. Nor did Appellants address whether refinancing was actually available, given that other liens would still be in place. Any expected increased revenue and return to the IRS from permitting a private sale were also not provided. As the Appeals Office noted, if the tax liens were to be withdrawn, given the particular circumstances of these taxpayers, the IRS would be placed in a precarious situation with respect to competing creditors and collection of any of the unpaid taxes.

The aforementioned consideration, deliberation, and conclusions by the Appeals Officers do not evidence the "abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS." *Living Care Alternatives of Utica*, 411 F.3d at 631. That Appellants disagree with the results from the exercise of the Appeals Officers' discretion does not correlate with that discretion thereby being abused. To second-guess the considerations

and rationale articulated by the Officers necessitates delving into the details of tax enforcement that reviewing courts should not do, as explained by this Court in *Living Care Alternatives of Utica.*

### III. CONCLUSION

For the reasons stated, the decisions of the district courts upholding the Appeals Office's Notices of Determination are **AFFIRMED.**